ALEX JOHNSON v. THE STATE.

No. 3752.   Decided May 6, 1908.

Carrying Pistol—Evidence—Imminent Danger of Attack.

Where upon trial for unlawfully carrying a pistol the evidence showed that the defendant had been threatened by certain parties with whom he had had a previous difficulty, and that he had been advised that these parties were looking for him to make an unlawful attack upon him, it was error to exclude testimony that defendant believed himself in danger of being attacked by said parties, and that the danger was so imminent and threatening as not to admit of the arrest of said parties upon legal process.

Appeal from the County Court of Angelina.   Tried below before the Hon. T. W. Jordon.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of $100.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—The appellant was charged in the County Court of Angelina County with unlawfully carrying a pistol.   On trial he was convicted and his punishment assessed at a fine of $100.

1. The statement of facts shows that when the trial began and appellant was required to plead to the information, he in terms admitted to the jury, before any testimony was offered by either party, that he had on his person a pistol at the time and place charged, but claimed that he did not carry the same unlawfully; that at the time of securing possession of said pistol and when he carried same that he had a reasonable ground for fearing an unlawful attack upon his person by Buster Steed and Pinckney Steed, and that the danger was so imminent and threatening as not to admit of the arrest of the parties about to make such attack, upon legal process.   The evidence showed that appellant and Buster Steed had a difficulty at the house of one George Collins some two nights before the time of the alleged offense, in which appellant was cut.   That on the night of the alleged offense, Alex Johnson, the appellant, went to the house of the witness Kennedy to get him to assist him, appellant, in moving his father and mother from Keltys to the town of Lufkin, and that after some conversation Kennedy stated to him that Pinckney Steed, brother of Buster Steed, with whom he had a difficulty a couple of nights before had just left the house before appellant came up; that this seemed to excite him and he replied that he would bet that they, Buster and Pinckney Steed, were out looking for him and that thereupon appellant immediately left the house and went over towards his mother's place and in a few minutes returned to his house and said that they were ready to load the wagons and to come

over and help him; that very shortly after this, the Steeds came in sight and that almost immediately both parties began to shoot; that the persons so engaged in the shooting were the Steed boys and appellant. The facts above recited were from the testimony of the witness Kennedy. In this state of the case, the appellant being a witness in his own behalf, testified among other things that Buster Steed had assaulted him with a knife, cutting him on the chin, on Saturday night previous to the second assault which was the day on which he is charged with unlawfully carrying arms and which was Monday night. That on the Sunday night following the first assault, he was at church in Lufkin when one Johnson came to him and advised him of some threats that Pinckney Steed made against him that night threatening to do him some serious bodily injury; that after receiving this information he left the church and went directly to his home; that on the next night, Monday, he had come to Keltys with a wagon to move his mother to Lufkin and while there visited at the house of Kennedy to secure his services to assist him in loading and moving the household effects; that while there Kennedy advised him that Pinckney Steed had just been there and that he, appellant, believed that Steed had heard that he was at Keltys and was looking for him, and that he, appellant, immediately left Kennedy's house and went to his mother's home nearby and secured a pistol. In this state of the case, appellant was asked by his counsel whether or not he was afraid of the Steed brothers and what was his object and purpose in securing possession of the pistol at the time he secured same. To these questions and the testimony sought to be adduced thereby, the State objected for the reason that it was immaterial as to whether appellant was afraid of the Steeds, and that the jury could judge the objects and motives of the appellant from the facts surrounding the case; that if permitted to answer appellant would have testified that he was afraid of the Steed brothers; that when he went to the house of Jim Kennedy on the night of the last assault, and just previous thereto and was then advised that Pinckney Steed had just been there, that he believed that the Steeds were at Kennedy's looking for him to do him some serious bodily injury and that he then left Kennedy's house and went to his mother's and secured possession of the pistol in question and that his motive and purpose in securing possession of said pistol at said time was for the purpose of protecting himself against any unlawful assault which the Steed brothers might direct against him; that he believed himself in danger of being attacked by said parties and that the danger was so imminent and threatening as not to admit of the arrest of the parties about to make such attack upon him upon legal process; that it was night time and two miles to where any peace officer resided. While some of this testimony is objectionable in that it gives the conclusion only of the witness, we think the substance of it should have been received and that in view of the entire record, the action of the court in excluding these facts was such material error as to justify and require a reversal of the case. The

parties had had, two days before, a serious difficulty in which appellant was cut with a knife; he had been warned before this, as appears from the testimony of the Steeds; he had been advised when he went to Kennedy's that one of the Steeds was looking for him; he seemed to have feared and believed that these parties were looking for him. Appellant had a right to move his mother; he. had a right to secure the aid of Kennedy. If he believed, as he testified, that these parties were searching for him and were likely at any minute to assault him, he was well within his rights in preparing himself to repel such an unlawful attack. That he was justified in his belief is demonstrated by subsequent events, for the Steeds did appear at Kennedy's and did open fire on him. In this situation of affairs, we think appellant should have had the right to have stated his apprehension and to have given in evidence his purpose and object in securing arms, and the court erred in excluding such testimony. For this error the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*